IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**JACK MILLER,**                                                 **CIVIL ACTION NO.** 3:21-cv-00244

    **Plaintiff,**

**v.**

**HUNTINGTON ALLOYS CORPORATION**
**d/b/a SPECIAL METALS,**

    **Defendant.**

## COMPLAINT

Your Plaintiff, Jack Miller, by his attorneys, Hoyt Glazer, Esq., Abraham J. Saad, Esq. and Eric B. Anderson, Esq. of Glazer Saad Anderson L.C., files this complaint seeking redress and remedy arising from Defendant Huntington Alloys Corporation's unlawful termination of him. The Defendant fired Mr. Miller based on false allegations that he made an offensive, racial remark nearly seven (7) years ago, and which the Defendant had long ago determined lacked sufficient merit to terminate Mr. Miller. Although Mr. Miller vehemently denied making the remark, the Defendant refused to believe him, and claimed that it had no records of its having made a previous determination in 2014 that the alleged statement did not support termination of Mr. Miller. Mr. Miller seeks compensatory and punitive damages against Defendant based on its reckless failure to comply with the anti-discrimination provisions of the West Virginia Human Rights Act (West Virginia Code § 5-11-1 et seq.) and the West Virginia common law prohibiting defamation and invasion of privacy.

## PARTIES

1. At all times alleged, Jack Miller, Plaintiff is and was a citizen and resident of Ironton, Ohio.

2. At all times alleged, Defendant Huntington Alloys Corporation is and was a foreign corporation with its principal office in Portland, Oregon doing business as Special Metals in Huntington, West Virginia. Precision Castparts Corporation owns Special Metals, which is licensed to do business in the State of West Virginia and manufactures nickel alloys.

## JURISDICTION AND VENUE

3. This Court has jurisdiction and venue over this civil action under 28 U.S.C. §1332 because your Plaintiff alleges that the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

4. Venue is appropriate in this case under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this claim occurred in Cabell County, which is in the Southern District of West Virginia.

## FACTS

5. Mr. Miller is a white male over the age of 50.

6. In August 1992, Mr. Miller began employment with the Defendant.

7. For the last several years of his employment, Mr. Miller worked as an operations area manager.

8. At all times, Mr. Miller met the reasonable expectations of the Defendant, and performed his job duties at a satisfactory or better level.

9. At all times, the Defendant maintained an "Ethics Point" hotline for employees to report alleged improper work practices and/or discrimination.

10. In April 2014, an "Ethics Point" investigation arose after someone accused Mr. Miller of using a racial epithet in a conversation with another employee.

11. A recording of the alleged conversation between Mr. Miller and the other employee exists, and the Defendant allowed Mr. Miller to listen to the conversation.

12. Mr. Miller listened to the conversation, and vehemently denied having made the remark.

13. After conducting its investigation, Defendant concluded Mr. Miller had made the derogatory remark.

14. The Defendant completed documentation of its investigation, determined that Mr. Miller's alleged remark did *not* warrant his termination or substantial discipline, and notified Mr. Miller of the same.

15. Shortly after its investigation, Defendant closed its "Ethics Point" case.

16. Over the next several years, Mr. Miller continued to fulfill his job duties for Defendant without incident or any suggestion that his work was less than satisfactory.

17. On or about November 11, 2020, Mr. Miller received a call from Defendant's human resources officer stating that he had an "Ethics Point" case against him.

18. The Defendant did not initially share the specifics of its investigation against Mr. Miller.

19. Mr. Miller later learned from Defendant that the "Ethics Point" involved the earlier 2014 investigation against him, which, incredibly, the Defendant claimed had never been resolved.

20. The Defendant also claimed that no records of its previous investigation against Mr. Miller existed.

21. Defendant's representation that it had not resolved the 2014 "Ethics Point" case against Mr. Miller is and was false, and the Defendant knew or reasonably should have known that.

22. After listening to the several years' old recording, the Defendant accused Mr. Miller of using a racial epithet, and fired him.

23. On information and belief, the Defendant failed to preserve the recording at issue, and improperly allowed at least one of its employees access to the same.

24. On information and belief, the employee who had the recording threatened to release it if the Defendant did not terminate Mr. Miller.

25. The employee who threatened to release the recording had previously received counseling from Mr. Miller for harassing and threatening other employees after several of these employees had reported concerns to Mr. Miller that this employee may engage in workplace violence against them.

26. The aforementioned employee had told others in Defendant's workplace that he "hated" Mr. Miller.

27. On information and belief, the above-mentioned employee is younger than Mr. Miller, and had posted the recording online.

28. On information and belief, the recording remained online for at least a half an hour before its removal, and numerous third parties listened to it.

29. On December 15, 2020, Defendant terminated Mr. Miller based on allegations that he had made an improper remark on the several years' old recording.

30. Numerous third parties have learned and/or obtained information concerning the circumstances of Mr. Miller's termination, which includes the posting of the recording that allegedly documents his voice.

31. Since his termination, Defendant has replaced Mr. Miller with a 35-year old employee.

32. As a result of and since the Defendant's termination of him, Mr. Miller has suffered loss of wages, emotional damages, and harm to his reputation and character.

## COUNT I: AGE DISCRIMINATION

33. Plaintiff incorporates the previous paragraphs as if set forth here.

34. Throughout his employment, Plaintiff satisfied all requisite job qualifications, was qualified for the position he held, and performed his job in a manner that met or exceeded Defendant's legitimate expectations.

35. Under § 5-11-3(h) of the West Virginia Human Rights Act, the term "discriminate" or "discrimination" means "to exclude from, of fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status. . . ."

36. Defendant treated employees who are not over 40 years of age more favorably than Mr. Miller because they are younger than he is.

37. Mr. Miller is over 40 years old, which is a protected class under West Virginia Code § 5-11-3(h) of the West Virginia Human Rights Act, West Virginia Code § 5-11-1 *et seq*.

38. West Virginia Code § 5-11-9 provides "It shall be an unlawful discriminatory practice, unless based on a bona fide occupational qualification, . . . (1) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if the individual is blind or disabled. . . ."

39. On information and belief, Defendant did not re-open pre-2015 "Ethics Points" investigations against persons under the age of 40.

40. Defendant did not discipline, layoff, terminate, or otherwise take adverse employment action against less senior and/or lesser qualified employees than Mr. Miller.

41. The Plaintiff's age was a motivating factor in the Defendant's decision to take the above described adverse actions against him, including, but not limited to, its having re-opened a closed "Ethics Points" investigation against him and terminating him.

42. Defendant's treatment of Plaintiff because of his age was done with malice and with reckless indifference to Plaintiff's rights and Plaintiff's emotional and physical well-being under the West Virginia Human Rights Act.

43. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer substantial damages. Wherefore, Plaintiff requests relief as provided in the prayer.

## COUNT II: INVASION OF PRIVACY/ FALSE LIGHT

44. Plaintiff incorporates the previous paragraphs as if set forth herein.

45. Defendant's actions against Plaintiff including, but not limited to, its accusing Plaintiff of using a racial epithet and allowing an employee to post a recording allegedly involving Plaintiff online without Plaintiff's consent resulted in unreasonably creating publicity that places Plaintiff in a false light in his community.

46. Defendant falsely represented and publicized to the public and members of Plaintiff's community that Plaintiff had used a racial epithet, which results in a false and offensive stigma on Plaintiff's character and reputation.

47. Defendant's false representation of Plaintiff to the public resulted in embarrassment, humiliation and damage to Plaintiff's character and reputation.

48. The false representation that Plaintiff used a racial epithet is and would be highly offensive to a reasonable person in our society, and could and would result in the public shaming and/or censure of Plaintiff online and in his community.

49. Defendant made false representations regarding Plaintiff when Defendant had knowledge said representations were/are false and/or did so with reckless disregard for the truth or falsity of said representations and/or did so contrary to the actions of a reasonable person under the same/similar circumstances, and

with disregard of how such false representations would result in an offensive stigma of Plaintiff in his community and/or ostracism by the community.

50. As a result of Defendant's actions, Plaintiff has suffered damages including, but not limited to, anxiety and emotional distress, and loss of his good reputation, and he seeks relief as provided below.

## COUNT III: DEFAMATION

51. Plaintiff incorporates the preceding paragraphs by reference as if set forth here in this count for defamation.

52. Defendant's unnecessary and unwarranted actions in accusing Mr. Miller of using a racial epithet conveys both a false and defamatory suggestion that Plaintiff was a racist and/or committed improper acts which are harmful to others.

53. Defendant's actions in accusing Mr. Miller of using a racial epithet constitute false statements in violation of the common law and public policies of the State of West Virginia, and would cause a reasonable person to consider Mr. Miller a person of ill reputation.

54. The actions and representations of Defendant and its agents in conveying that Plaintiff had engaged in the use of a racial epithet constitute false and non-privileged communications to third parties and the community where Plaintiff lives, as well as places where Plaintiff does not live given the distribution of these false statements over the internet.

55. The Defendant has also conveyed to non-privileged third persons and the public the false and misleading impression that Plaintiff has engaged in illegal and/or improper activity.

56. Defendant's above allegations against Plaintiff were negligent and reckless, and published in reckless disregard for their truth or falsity, to persons who had no need to receive the alleged information.

57. Before and at the time of Defendant's defamation of Plaintiff's character, Plaintiff possessed a good name and character in his community, and the community did not have any reason to believe he was involved in any alleged improper activity and/or had used a racial epithet as the Defendants recklessly believed and disseminated to non-privileged third parties.

58. As a result of Defendant's unlawful and defamatory actions, Plaintiff has suffered embarrassment, humiliation, and general damages to his reputation.

59. Defendant's conduct arose from hatred and ill-will toward Plaintiff and a desire to harm the Plaintiff and with the wrongful and illegal intention to damage his character, reputation and credentials, and shame Plaintiff.

60. The actions taken toward Plaintiff were carried out in a deliberate, callous and intentional manner in order to intimidate and injure him, and Defendant's conduct supports recovery of punitive damages in an amount sufficient to deter such conduct in the future and make an example of it.

## COUNT IV: RESPONDEAT SUPERIOR/NEGLIGENT HIRING, SUPERVISION AND RETENTION

61. Plaintiff repeats and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth herein verbatim.

62. Defendant was negligent in several aspects, including but not limited to the following facts:

   a. Failing to properly interview, evaluate and screen its employees, including the one who disseminated the alleged recording of Mr. Miller online;

   b. Failing to ensure that its employees maintained the privacy and security of all "Ethics Point" and other investigations involving Mr. Miller and other employees;

   c. Failing to remove the aforementioned employee who disseminated the alleged recording of Mr. Miller online and to unauthorized third parties when it became apparent that such employee was actively engaging in inappropriate, abusive and threatening behavior against its employees; and

   d. Failing to maintain accurate and complete records involving the closed investigation against Mr. Miller from 2014, which determined he had not engaged in any activity supporting his termination.

63. Defendant Board had an affirmative duty to properly investigate the background of its employees prior to providing employment. Upon information and belief, Defendant Board breached said duty by negligently hiring and retaining the employee who disseminated the alleged recording of Mr. Miller to unauthorized third parties and online.

64. Defendant also had a legal duty to ensure that its employees maintained the confidentiality of all its investigations, and maintain safeguards preventing the release and unauthorized dissemination of resolved "Ethics Point" investigations.

65. As a result of Defendant's breaches of its duties to Mr. Miller, he has sustained damages for which he seeks relief.

## V. OUTRAGE

66. Plaintiff incorporates the preceding paragraphs by reference for this outrage count, and states that such allegations support the following elements of Mr. Miller's outrage claim.

67. Defendant's above actions and inactions were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency because Defendant has the legal obligation not to defame and/or publish statements about its customers that depict them in a false light.

68. Defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from its conduct.

69. Defendant's reckless, wanton and grossly negligent actions violated and breached its duties to Plaintiff to not cause damage, harm or embarrassment to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks damages as set forth below:

On all counts, grant Plaintiff general and compensatory damages for annoyance, inconvenience, embarrassment, humiliation and emotional distress suffered by Plaintiff as a direct and/or proximate result of Defendant's conduct in an amount no less than $75,001;

On all counts, grant Plaintiff punitive damages in an amount to be determined by a jury and sufficient to deter future improper conduct and to punish the Defendant for its reckless and willful actions;

On all counts, attorney fees and prejudgment and post-judgment interest on all amounts allowed by law; and

Such other relief as this Court deems fair and proper in the interest of justice.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES.**

                                     PLAINTIFF, JACK MILLER
                                     By his counsel,

<u>s/Hoyt Glazer</u>
Hoyt Glazer, Esq (WV Bar #6479)
Abraham J. Saad, Esq. (WV Bar #10134)
Eric B. Anderson, Esq. (WV Bar #11895)
GLAZER SAAD ANDERSON L.C.
320 Ninth Street, Suite B
P.O. Box 1638
Huntington, WV 25717
T. 304.522.4149
F. 800.879.7248
hoyt@gsalaw-wv.com