IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JACK MILLER,

                Plaintiff,

v.                              CIVIL ACTION NO.  3:21-0244

HUNTIGNTON ALLOYS CORPORATION
d/b/s SPECIAL METALS,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion to Dismiss. ECF No. 4. For the following reasons, the motion is **GRANTED, in part,** and **DENIED, in part**.

**I. BACKGROUND**

On April 14, 2021, Plaintiff Jack Miller filed the Complaint against his former employer, alleging the following facts. Huntington Alloys Corporation ("HAC") employed Miller from 1992 to 2020. ECF No. 1. In 2014, HAC's "Ethics Point" hotline received a complaint from an employee alleging that Miller, a male over fifty, used a racial slur in a conversation with another employee. *Compl.* ¶¶ 5, 10. HAC then opened an investigation and obtained a recording of the conversation. *Id.* ¶ 10. Miller denied using a racial slur during that conversation, but HAC concluded that he had made the remark. *Id.* ¶¶ 12, 13. Nevertheless, HAC ultimately chose not to terminate his employment. *Id.* ¶ 14.

In early November of 2020, HAC opened another investigation based on the same conversation. *Id.* ¶ 17. During this investigation, HAC is alleged to have "improperly allowed at least one of its employees access to the [recording]." *Id.* ¶ 23. The employee then threatened to

post it online unless HAC fired Miller. *Id.* ¶ 24. Apparently finding no success, the employee posted the recording on a social media website and removed it about half an hour later. *Id.* ¶ 28. On December 15, 2020, HAC fired Miller after again concluding that the recording demonstrated Plaintiff's use of a racial slur. *Id.* ¶ 29. Plaintiff again denied making the remark but was eventually replaced by a younger employee. *Id.* ¶ 31.

The Complaint asserts five causes of action against HAC: (I) age discrimination; (II) false light, invasion of privacy; (III) defamation; and (IV) respondeat superior/negligent hiring, supervision, and retention; and (V) outrage (intentional infliction of emotion distress). HAC now moves the Court to dismiss four of the five counts because it is immune from suit under the Worker's Compensation Act, and because Plaintiff has failed to state a claim under Rule 12(b)(6).

## II. STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . . " *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the

court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

### III. DISCUSSION

(A) Immunity under the Workers' Compensation Act

HAC argues that Miller's common law tort claims must be dismissed because they fall within the scope of its immunity under the West Virginia Workers' Compensation Act. "The Act was developed to provide a speedy and expeditious means of compensating injured employers for workplace injuries." *Fugate v. Frontier W. Virginia, Inc.*, No. 2:17-CV-00559, 2017 WL 3065216, at *5 (S.D.W. Va. July 19, 2017) (quoting *Meadows v. Lewis*, 307 S.E.2d 625, 638 (W. Va. 1983)). To that end, the Act creates "sweeping immunity" for employers for all common law tort actions by employees for injuries occurring "in the course of and resulting from a claimant's employment.'" *Bias v. E. Associated Coal Corp*., 640 S.E.2d 540, 545 (W. Va. 2006); *see* W. VA CODE § 23-2-6 (providing an employer in compliance with the Act "is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring"). However, an employee may maintain an action against an employer that is otherwise entitled to immunity if that employer: (1) defaults in payments required by the Act or otherwise falls out of compliance with the Act, (2) acts with "deliberate intent" to injure the employee, or (3) "in such other circumstances where the Legislature has by statute expressly provided an employee a private remedy outside the workers' compensation system." Syl. Pt. 2, *Bias*, 640 S.E.2d at 540.

Here, HAC argues that its immunity extends to Plaintiff's common law tort claims because each is alleged to have given rise to workplace injuries, and that Plaintiff cannot meet any of the above exceptions to dissolve that immunity. Plaintiff asserts that HAC is not entitled to immunity because (1) his injuries are not physical and (2) did not occur in the course of and resulting from his employment.

The Court can easily dispense with Plaintiff's first argument because the Act's immunity

provision can encompass non-physical injuries in some instances. *See* Syl. Pt. 3 *Bias*, 640 S.E.2d at 540 (concluding that the employer's immunity precluded plaintiff's mental injury claims despite them being non-compensable under the Act). However, the Court agrees with Plaintiff's second argument and finds that these claims are outside the scope of HAC's immunity. Although the statute immunizes employers from suit for "injuries, however occurring," the Supreme Court of Appeals of West Virginia has defined that phrase to mean "an employee who is injured in the course of and as a result of his employment, and one who, under the common-law principles of master and servant, could have maintained an action against his employer." *Falls v. Union Drilling Inc.*, 672 S.E.2d 204 (W. Va. 2008) (quoting *Cox v. United States Coal & Coke Co.*, 92 S.E. 559, 561 (W. Va. 1917)). Consequently, employers are only immune from suit when a plaintiff's claim arises from a "work-related injury, i.e., an accidental personal injury arising out of and in the course of employment." *Id.* at 210 (citing *Wetzel v. Employers' Serv. Corp. of W. Va.*, 656 S.E.2d 55 (W. Va. 2007)). Here, Miller did not sustain his injuries in the course of performing his job. Rather, his alleged injury based on these torts (reputational harm stemming from the online post) is only tangentially related to his employment.

The West Virginia Supreme Court of Appeals decisions cited by Defendant do not demand a different result. In each of those cases, the parties agreed that the employer was entitled to immunity as a threshold matter but disputed whether it should lose that immunity under one of three narrow exceptions. *See also Tolliver v. Kroger Co.*, 498 S.E.2d 702, 713 (W. Va. 1997) (considering whether the plaintiff, who alleged that another employee assaulted and battered her at work, sufficiently pleaded deliberate intent); *Bias*, 640 S.E.2d 540 (holding that an employer was immune from suit where the employee alleged mental and emotional injuries after he was trapped in a coal mine). In contrast, Plaintiff argues that Defendant's immunity

never extended to his claims. The Supreme Court of Appeals distinguished these cases on similar grounds in *Falls*, noting that *Bias* only applies to the extent that the employee was clearly "injured on the job." *Falls*, 672 S.E.2d at 210–11. As noted above, HAC does not clear this threshold inquiry. Therefore, the Court denies HAC's request for immunity.

(B) <u>Failure to State a Claim Under Rule 12(b)(6)</u>

a. <u>Defamation</u>

Defamation is "[a] false written or oral statement that damages another's reputation." *Pritt v. Republican Nat'l Comm.*, 557 S.E.2d 853, 861 n.12 (W. Va. 2001). "The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 74 (W. Va. 1983). After setting aside conclusory statements of law, the Court can only identify three allegations that could potentially support a claim of defamation. All fail to state a claim.

First, the Complaint vaguely states that HAC "accused Mr. Miller of using a racial epithet[] and fired him." *Id*. at ¶ 21. This allegation is inadequate because it does not allege that HAC made this accusation to a non-privileged third party. Although Plaintiff states elsewhere that "Defendant has also conveyed to non-privileged third persons and the public the false and misleading impression that Plaintiff has engaged in illegal and/or improper activity," this is nothing but a threadbare recital of the elements. *Compl*. ¶ 55. To state a viable claim, Plaintiff needed to assert *how* HAC made the accusation and *to whom*. Because Plaintiff has not done that here, his allegation is insufficient.

Second, Plaintiff asserts that HAC "improperly allowed at least one of its employees

access" to the recording. *Id*. at ¶ 23. This allegation also falls short because allowing access to a recording does not constitute a defamatory statement without being accompanied by a representation that Plaintiff was the voice of the racial slur. Again, Plaintiff's Complaint stops short of making that allegation. Therefore, this allegation is also insufficient.

Finally, Plaintiff's third allegation fails because it is implausible. Plaintiff claims that HAC defamed him by "allowing an employee to post a recording allegedly involving Plaintiff online . . . . " *Compl*. ¶ 45. This allegation is not consistent with the primary factual allegations in the beginning of the Complaint, which state that "HAC allowed at least one of its employees access to the [recording.]" *Id*. at ¶ 23. Although seemingly minor, this difference is important because West Virginia law does not hold an entity liable "for a libel published by one of its agents unless he was authorized thereto, or his acts subsequently ratified . . . . " *Miller v. City Hosp., Inc*., 475 S.E.2d 495, 503 (W. Va. 1996) (quoting *Barger v. Hood*, 87 W. Va. 78, 83, 104 S.E. 280, 282 (1920)). Allowing publication of a recording implies authorization of the employee's post, whereas allowing access to a recording does not. Of course, both of these allegations can be true; HAC could have allowed its employee access to the recording intending the employee to post it online. However, that scenario also contradicts Plaintiff's allegation that the employee "threatened to release [the recording] if the Defendant did not terminate Mr. Miller." *Id*. at ¶ 24. To state the obvious, it is implausible that HAC authorized the employee to post the recording online, only to have the employee in turn threaten HAC with the same. This apparent incoherence in the allegations results in the insufficient showing that any post made by an employee could be attributed to HAC at all. Plaintiff's claim cannot proceed without a coherent theory of liability.

This allegation also raises the question as to whether a brief posting of the recording on

the internet amounts to publication under a defamation analysis. Publication for the purposes of defamation constitutes "any form of intentional or negligent communication of a defamatory statement to a third person." *Crain v. Lightner*, 364 S.E.2d 778, 785 (W. Va. 1987). Unless the alleged defamatory statement is communicated to a non-privileged third party, then there has been no resulting injury, no diminution of Plaintiff's reputation. *See id.* Plaintiff here alleges that Defendant allowed an employee to post the recording of him on the internet which remained online for about half an hour before it was removed. *Compl.* ¶¶ 45, 28. He also alleges that "numerous third parties listened to it." *Compl.* ¶ 28. Again, this allegation is nothing more than a threadbare recital of the publication requirement. Plaintiff must assert *to whom* the alleged defamatory statement was made.

In addition, Plaintiff fails to properly identify a defamatory statement. Although Plaintiff alludes to the fact that others in the community learned about the recording, he does not allege that the employee named him as the voice of the racial slur online or that HAC authorized the employee to make such a representation; no such showing was made that the posted recording could even be attributed to HAC at all. Rather, Plaintiff alleges that HAC "allow[ed] [an] employee to post a recording allegedly involving Plaintiff online." *Compl*. ¶ 45. Accordingly, this count must be dismissed.

b.  <u>False Light, Invasion of Privacy</u>

The tort invasion of privacy can take one of four forms under West Virginia law: "(1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." *Adkins v. CSX Transp., Inc.*, No. CV 3:18-0321, 2021 WL 3355417, at *3 (S.D.W. Va. Aug. 2, 2021) (quoting *Crump*, 320 S.E.2d

at 70) (adopting the Restatement (Second) of Torts analysis for invasion of privacy). A person

may be liable under the fourth form if that person:

> gives publicity to a matter concerning another that places the other before the
> public in a false light . . . [and]
>
> (a) the false light in which the other was placed would be highly offensive to a
> reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of
> the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977). Unlike defamation, the false light analysis

requires that the publicity be "widespread." *Imagine Medispa, LLC v. Transformations, Inc.*, 999

F. Supp. 2d 873, 887 (S.D.W. Va. 2014) (quoting *Crump*, 320 S.E.2d at 87–88) (internal

quotation marks omitted). That said, "courts and commentators have consistently treated false

light privacy claims in essentially the same manner as they have treated defamation." *See Crump*,

320 S.E.2d 70, 87 (W. Va. 1983) (internal citations omitted).

The Complaint raises this claim based on the same allegations above. Given the

similarities between the tort of defamation and false light, the Court reaches the same conclusion

here and finds this claim must also be dismissed.

c.   Negligent Hiring, Supervision, and Retention

In *McCormick v. W. Va. Dep't of Pub. Safety*, the West Virginia Supreme Court of

Appeals explained that a claim of negligent hiring or retention involves the following inquiry:

> When the employee was hired or retained, did the employer conduct a
> reasonable investigation into the employee's background vis a vis the job for
> which the employee was hired and the possible risk of harm or injury to co-
> workers or third parties that could result from the conduct of an unfit
> employee? Should the employer have reasonably foreseen the risk caused by
> hiring or retaining an unfit person?

503 S.E.2d 502, 506 (W. Va. 1998) (per curiam). The *McCormick* Court further explained that

the inquiry depends upon "the nature of the employee's job assignment, duties, and responsibilities." *Id*. at 507. "The duty with respect to hiring and retention increases 'as the risks to third persons associated with a particular job increase.'" *Woods v. Town of Danville*, 712 F. Supp. 2d 502, 514 (S.D.W. Va. 2010) (quoting *id*.).

Similar to negligent hiring, claims of negligent training and supervision are governed by general negligence principles under West Virginia law. *See, e.g.*, *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000) (treating negligent supervision like other claims based in negligence). To establish a negligent supervision claim, a plaintiff must show "that the employer failed to properly supervise its employees and, as a result, those employees proximately caused injury to another." *Biser v. Mfrs. and Traders Trust Co.*, 211 F. Supp. 3d 845, 856 (S.D.W. Va. 2016) (citing *Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 817–18 (S.D.W. Va. 2012)). As with general negligence, "the analysis centers on whether the employer was on notice of the employee's propensity (creating a duty), yet unreasonably failed to take action (manifesting a breach), resulting in harm to a third-party from the employee's tortious conduct." *Radford v. Hammons*, No. 2:14–24854, 2015 WL 738062, at *7 (S.D.W. Va. Feb. 20, 2015) (citation omitted).

Plaintiff claims that HAC negligently hired, supervised, and retained, its employees in four ways. First, Plaintiff alleges that HAC failed to "properly interview, evaluate and screen its employees, including the one who disseminated the alleged recording of Mr. Miller online." *Compl*. ¶ 62(a). This allegation fails because Plaintiff has failed to allege that HAC had notice of a risk to third parties when it hired its employees.

Second, Plaintiff alleges that HAC failed "to ensure that its employees maintained the privacy and security of all 'Ethics Point' and other investigations involving Mr. Miller and other

employees." *Compl*. ¶ 62(b). Although a close call, the Court finds that there is enough in the Complaint to state a plausible claim. Plaintiff has alleged that HAC possessed the recording (or a copy of the recording) and then improperly allowed an employee to access it. In allowing the employee to access the recording, it is plausible that HAC proximately caused harm to Miller.

Defendant argues that this allegation is insufficient because Miller does not plausibly allege how HAC failed to protect Miller's private information. Specifically, HAC asserts that Plaintiff needed to allege exactly who was responsible for keeping the recording confidential and how the employee obtained the recording at this stage. Although those facts will be relevant at the summary judgment stage, the Court finds that they are not necessary to give Defendant adequate notice of the claims against it. Accordingly, dismissal on that ground is premature.

Third, Plaintiff alleges that HAC failed "to remove the aforementioned employee who disseminated the alleged recording of Mr. Miller online and to unauthorized third parties when it became apparent that such employee was actively engaging in inappropriate, abusive and threatening behavior against its employees." *Compl*. ¶ 62(c). Defendant argues that this is not a viable negligent supervision claim because it is not plausible that failing to remove the employee caused Plaintiff's harm. Defendant explains that firing the employee after his or her threat would not only have been an ineffective way to prevent them from posting the recording online—it would have increased their motivation to post the recording. Although this interpretation is fair, it ignores Plaintiff's allegation this employee "previously received counseling from Mr. Miller for harassing and threatening other employees after several of these employees had reported concerns to Mr. Miller that this employee may engaged in workplace violence against them." *Compl*. ¶ 25. Plaintiff also alleges that this employee told others at HAC that he "hated" Plaintiff. *Id*. at ¶ 26. When taking these allegations into account, it is plausible that this conduct was so

egregious that it put HAC on notice that retaining this employee might lead to threats and harassment against Plaintiff. Despite Defendant's arguments otherwise, the fact that Plaintiff himself counseled the employee is not determinative at this stage. The Court again finds that dismissal on that ground is premature.

Fourth, Plaintiff alleges negligent supervision, claiming that HAC failed "to maintain accurate and complete records involving the closed investigation against Mr. Miller from 2014, which determined he had not engaged in any activity supporting his termination." *Compl.* ¶ 62(d). The Court must determine whether Plaintiff has alleged facts that supports this claim of negligence. To prevail on a negligence claim, a plaintiff must establish that there was a duty owed to him, that there was a breach of that duty, and that plaintiff suffered injuries that were proximately caused by the breach of duty. *Wheeling Park Commission v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016), *see Biser*, 211 F. Supp. 3d at 856 (finding that a plaintiff must show that the defendant employer failed to adequately supervise its employees, which resulted in injury to the plaintiff). Plaintiff here asserts that HAC has a legal duty to maintain and keep confidential records of Plaintiff's employee information, including the 2014 "Ethics Point" investigation. *Compl.* ¶ 64. Further, Plaintiff asserts that the failure to maintain the records of the initial investigation—which originally resulted in a "no termination" decision—led Defendant to reopen the 2014 investigation and reconsider the matter, ultimately leading to Plaintiff's termination. *Compl.* ¶¶ 62(d), 65. Simply put, Plaintiff alleges that HAC's failure to keep and maintain the record of the 2014 investigation was negligent and that HAC's negligence resulted in injury—his termination. At the Motion to Dismiss stage, Plaintiff has alleged sufficient facts to support this claim.

Finally, the Court must address Defendant's argument that Plaintiff's claim for vicarious

liability should be dismissed. Defendant argues in its motion that the Court should dismiss Plaintiff's "Respondeat Superior" claim because he has failed to identify the underlying tort upon which HAC should be liable for its agents. Plaintiff merely asserts with this claim that Defendant's supervision was negligent, and that negligence results in Respondeat Superior liability.  In West Virginia, "if it can be shown that an individual is an agent and if he is acting within the scope of his employment when he commits a tort, then the principal is liable for the tort as well as the agent." *Courtless v. Jollife*, 507 S.E.2d 136, 139–40 (W. Va. 1998). Thus, under this theory, HAC is liable for the negligent conduct of its employees that: 1) failed to terminate the employee that harmed Plaintiff upon becoming aware of the employee's inappropriate and abusive behavior; and 2) failed to adequately maintain and keep records of the 2014 investigation.

Accordingly, this claim survives at the motion to dismiss stage.

### d.  Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress under West Virginia law, a plaintiff must prove the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Lab'ys, Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998). This language was patterned after Section 46 of the Restatement (Second) of Torts, which requires that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."

*Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 705 (W. Va. 1982). Intentional infliction of emotional distress is considered an independent cause of action in West Virginia. *Travis*, 504 S.E.2d at 424; *see Richards v. Walker*, 813 S.E.2d 923, 927 n.6 (W. Va. 2018) ("Intentional or reckless infliction of emotional distress, also called the 'tort of outrage,' is recognized in West Virginia as a separate cause of action." (citing *Travis*, 504 S.E.2d at 424)).

The West Virginia Supreme Court of Appeals has permitted IIED claims against employers arising out of terminations of employment where "the employee's distress results from the outrageous manner by which the employer effected the discharge." *See Gibson v. Shentel Cable Co.*, No. CIV.A. 2:11-00229, 2011 WL 3423336, at *5 (S.D.W. Va. Aug. 5, 2011) (Copenhaver, J.); Syl. Pt. 11, *Roth v. DeFeliceCare, Inc.*, 700 S.E.2d 183 (W. Va. 2010) (quoting Syl. Pt. 2, *Dzinglski v. Weirton Steel Corp.*, 445 S.E.2d 219 (1994)); *see also Travis*, 504 S.E.2d at 426 (noting that "the existence of a special relationship in which one person has control over another, as in the employer-employee relationship, may produce a character of outrageousness that otherwise might not exist" and that "[t]he employer-employee relationship should entitle an employee to a greater degree of protection from insult and outrage than if he were a stranger to defendants") (internal quotations and citations omitted); *id.* at 431 ("a supervisor may be held individually liable for the tort of outrage when committed during the course of employment").

When a case involves an issue of employment discrimination, two separate causes of actions arise: the wrongful discharge and the intentional infliction of emotional distress. *Hosaflook v. Consolidation Coal Co.*, 497 S.E.2d 174, 185 (citing *Dzinglski*, 445 S.E.2d at 284). The discriminatory motivation behind the termination itself cannot suffice to establish the outrageous conduct that rises to the level of IIED. *Id.* The actual manner in which the termination was effected must be the basis for this claim. *Id.*

Here, the first question to be addressed is whether HAC's alleged conduct can be reasonably considered "extreme and outrageous." *See Travis*, 504 S.E.2d at 427. Termination based on discrimination itself cannot be the basis for a claim of IIED. *See Dzinglski*, 445 S.E.2d, at 226 ("When, however, the employee's distress results from the outrageous manner by which the employer effected the discharge, the employee may recover under the tort of outrage. In other words, the wrongful discharge action depends solely on the validity of the employer's motivation or reason for the discharge. Therefore, any other conduct that surrounds the dismissal must be weighed to determine whether the employer's manner of effecting the discharge was outrageous."). Plaintiff fails to raise any allegations relating to the actual *manner* in which he was terminated beyond noting that his termination was "based on allegations that he made an improper remark on the several years' old recording." *Compl.* ¶ 29. Thus, Plaintiff raises no conduct in the form of the manner of his termination that rises to the requisite level of "outrageousness" here.

Next, the Court will consider other allegations Plaintiff raises to determine whether he alleges conduct that rises to the extreme and outrageous level necessary to establish a claim of IIED. Plaintiff specifically alleges that the defamation and the publication of statements that paint him in a false light constitute conduct that is "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." *Compl.* ¶ 67. The claims for both defamation and false light have failed. However, the Court can consider the factual allegations raised for these claims in its analysis of IIED. *See Travis*, 504 S.E.2d at 424 (noting that IIED is an independent cause of action). Throughout the Complaint, Plaintiff raises the following: HAC re-opened the 2014 "Ethics Point" investigation into his alleged use of a racial epithet in a conversation with another employee; HAC lost the records (which included the recorded

conversation in question) of this initial investigation; HAC allowed an employee to access the recording from this investigation; HAC allowed the employee to post the recording briefly on the internet; and, HAC terminated Plaintiff based on the allegations in the 2014 investigation. *Compl.* ¶¶ 21, 23, 29, 45, 66.

When it comes to "outrageousness," liability is found in only the most extreme of cases. *Travis*, 504 S.E.2d at 425. As the court in *Travis* reiterates:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id.* This is a high bar indeed. Where Plaintiff's allegations were insufficient to establish the claims of defamation and invasion of privacy, they also do not rise to the requisite level of "outrageousness" under an IIED analysis. Therefore, Plaintiff's claim for IIED must also fail.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES**, **in part,** and **GRANTS**, **in part,** the Motion to Dismiss. ECF No. 4.

The Motion is **DENIED** to the extent that it seeks to dismiss Count IV.

The Motion is **GRANTED** as to Counts II, III, and V. Accordingly, Counts II, III, and V of the Complaint against Defendant are **DISMISSED**.

The Court **DIRECTS** the clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          September 17, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE